Judge Mills
delivered the opinion of the Court.
This is a bill brought to revive and enforce a decree in favor of the present appellees, rendered in 1803, against the ancestor of the appellants, directing him to convey a tract of land, because it was covered by a supposed prior entry, set up in the original bill. The decree was rendered against the then defendant as a non-resident, after publication against him, without appearance or answer. The time for a writ of error had elapsed before this bill was brought, as well as the seven years allowed for the non-residents to contest it, and indeed, about sixteen years bad passed away.
The appellants contend, in their answers, that the proceedings by publication were irregular, and the decree in pursuance thereof, absolutely void; or at least, so voidable that they ought to be allowed to question the original equity.
The court below held the decree valid and incontestible, and carried it into effect, without any variation. From this decree, the appeal is prayed.
It is evident that the main question must be, whether this decree is void. For if it be voidable and erroneous merely, it might be difficult to sustain the right of the appellants, now to impeach it, after the hour for a writ of error is passed by; and perhaps by analogy, the right to a bill of review for errors apparent on the face of the decree, is gone also.
An order of publication was regularly made against John Green, through whom the appellants claim, fixing a day for his appearance at a future term.
The editor of the Kentucky Gazette, a then authorized newspaper, made oath before a justice of the peace, that the order had been regularly insert *542 ed for two months successively, in his paper, being the time required by law, and his afidavit is filed.
Recital of the proof of the publication of the orders in the decree.
Act of ’96, authorizing the advertisements and proclamations in suits against absent defendants.
*542 The interlocutory decree recites the publication thus, “It appearing that the order to advertise against the absent defendants herein, has been duly advertised in the Kentucky Gazette, but has not been published at the door of the court house and meetinghouse; if is ordered that a copy of said order be posted at the door of the courthouse, and another at the door of the presbyterian meeting house in Lexington, according to law; and that the proof thereof be made before entering the final decree” The order of publication itself, directed it to be “posted at the door of the court house for Fayette county; and that the order be published some Sunday, immediately after divine service, at the door of the presbyterian meeting house, in the town of Lexington.”
At the final decree, an affidavit was filed, made before a justice of the peace, by a person who was not a party, stating “that on the 23rd of the preceding July, he posted at the court house door in Lexington, one copy of the two orders to advertize; and on the 24th of the same month, he posted another copy of the two orders, at the presbyterian meeting house, in the said town of Lexington, according to law.”
The final decree makes its recital thus:
“The report of the surveyor being returned pursuant to the interlocutory decree and order of this court, made herein at the last term, and it appearing that the order to advertize agreeably to said order, being regularly advertized, it is decreed and ordained,” &c. proceeding with the final decree.
This history of the proceedings will shew the following variances from the law, as it then stood.
The act then in force permitting advertisement or publication against non-resident defendants, directed that “the court should, by order, point out some day in the succeeding term, for the absent defendant or defendants to enter his, her or their appear *543 ance to the suit;” and that "a copy of which order should be forthwith published in the Kentucky Gazette or Herald, and continued for two months successively, and also be published, on some Sunday, immediately after divine service, in such church or meeting house, as the court should direct; and another copy should be posted at the front door of the court house.”
An affidavit of the service of a subpoena or publication of an order in a suit against an absent defendant could not be made before a justice of the peace.
It was necessary for the orders of proclamation &c against absent defendants, to be proclaimed in the church, and posted at the courthouse door before the appearance day, and for the proof to appear in the cause——By the act of ’96 1 Litt. L. K. 593.
Publication of an order requiring the defendant to appear years before the publication, is non, do.
The affidavit of the editor does prove the publication in the Gazette. But that affidavit was not admissible evidence of the fact; a justice of the peace had no authority to administer the oath, and that power could only be exercised by the court, or some officer authorized by the court to administer it, as held by this court with regard to the proof of the service of a subpoena, in Trabue’s heirs vs Holt, &c. 2 Bibb, 393.
But if this could be gotten over, the affidavit proves the publication in the paper only, and the want of further proof appearing, and the recital in the interlocutory decree, furnish conclusive evidence that a copy of the order had not been posted at the court house door, or published in church; and to supply the defect, the party is directed to have that done after the interlocutory, and before the final decree. The act is not precise in directing the time when the order should be posted at, the court house door, or how long it should remain; but it certainly must be done some time between the date of the order and day of appearance. The same may be said of the publication of the order in church; and it is worthy of remark, that posting a copy at the door of the church, as directed by the court, did not comply with this requisition, but only a reading or proclaiming the order in the assembled church would do.
That this part of the order of court was complied with, is again attempted to be proved by affidavit before a justice, of the peace; and the recital in the final decree, evidently is based on this evidence. But if the evidence could be admitted, both it and the order of court, at the interlocutory decree directing it, presents an insuperable objection. *544 The party was directed to post up at the door of the court house and church, an order of publication long expired in its terms. The witness swears that he posted a copy of two orders at each place, and the latest, of these orders warned the absentee to appear on a day elapsed not less than two years before the copy was posted. This seemed like a mockery of the express requisitions of the statute.
Recital in a decree, of the publication of the orders against an absent defendant, does not prove it, but the evidence must be filed.
Persons who do not appear to the bill, can be made parties to the decree only by service of process, actual or constructive.
Sales of land by execution, on a decree obtained without an appearance or service of process, passes nothing.
The recitals of the decrees are relied upon as shewing that the court below had the proper proof before them, and acted right. This presumption is a general and necessary one. But a recital of facts in a decree in chancery, where the evidence thereof must be filed, and the evidence does not appear in the record, can not be taken as true; and this holds good with regard to the service of process in the case of decrees by default, as held by this court in the case of Peers vs Carter’s heirs, 4 Litt. Rep. 268.
These irregularities would, undoubtedly, render this decree voidable; but the enquiry remains, is it void?
This question, we consider, as substantially settled by former adjudications of the court. It is a principle too well known to need support, that no person can be affected by a record, or decree, to which he is not a party, (except by proceedings in rent,) nor are his rights concluded by them; and it is already settled in Bond vs Hendricks, 1 Marsh. 592, and in Estill’s heirs vs Clay, 2 Marsh. 500, that naming a party defendant, does not make him a party; and is only one of those previous acts necessary and preparatory, to make him so; and it is the service of process alone, either actual or constructive, that actually makes him a party.
In the case of Moore vs Farrow &c. 1 Marsh. 41, it is held that a sale of lands by execution or decree in chancery, where there had been neither actual nor constructive service of process passed nothing, and the proceedings were void. The same doctrine was approved and recognized in the case of Delano vs Jopling, 1 Lit. Rep. 417; and this court has boon guided by these decisions ever since.
Decrees obtained against absences by the constructive notice—by proclamation and publication in the newspapers, are bought, unless it appears all the requisites of the law as to the orders and the advertisements of them are complied with——Bill will and be maintained to revive an execute such a decree.
Entry set up by complainant.
Survey of the entries directed.
Now, actual service here is not pretended, but the application is to amend and uphold, and heal defects in a service, which if perfect, could, at best, be constructive; and to conclude the rights of the appellants by force of law, while that law was not complied with. Such ex parte proceedings must be substantially complied with, and can not be held to less strictness before they can have any force. We perceive no sensible point at which we can stop, short of dispensing with publication altogether, if we once commence a dispensation, first with one and then with another requisite of law, and the best rule is to require a compliance with every requisite, or let all other acts and substitutes stand for nothing, in a case where the, rights of parties are liable to be taken away without any actual notice of the proceeding. Such proceeding, in the case of lands are, at best, of doubtful policy, and may be attended with monstrous consequence; and if carried too far, by construction upon construction, and one dispensation of law after another, might start constitutional scruples, how far the legislature could authorize any court to revoke a defendant’s grant by ex parte proceeding, especially as it has been held, by high authority, that the legislature can not do so by direct legislation. We therefore, can not dispense with any requisite of the law in making publication, and until it is shewn that all the requisites arc complied with, we must treat this, as well as every other decree, as void and inoperative on the nigh is of the parties concerned. This conclusion places the, appellees back on their original equity, and they must succeed by that, if at all.
The complainants claim by virtue of an entry or pre-emption warrant, which has one simple call— and that is, “adjoining the settlement on the east side.” The- settlement certificate and entry calls to lie “on the north side of the north fork of Elkhorn creek, joining the lands of William Russell and Vaughn.”
Russell and Vaughn had two military surveys. Which are admitted to be notorious at the date of the complainant’s claim, joining each other in one com *546 mon line the whole length thereof, and as north Elkhorn passes through each survey, on the north side of the stream, each presents a line, united at one common corner. As the complainant’s settlement must join both, their claim must the at this point, and he surveyed in a square, extending equal distances on the lines of Vaughn and Russell respectively, placing their common corner in the centre. This is the mode which the court below first directed the claim to he surveyed.
Question reserved, left open till the necessary surveys are made.
Wickliffe for plaintiffs; Haggin and Chinn for defendants.
The pre-emption, which is the claim in dispute, must.be surveyed in a square, and placed in the angle formed by the settlement and Vaughn’s line. Thus it will hind on the most eastwardly side of the settlement, and not interfere with Vaughn, whose claim is used as a call, on which its own existence depends.
This is according to well settled principles, the mode of surveying this entry, and as it differs from that adopted by the court below in its first decree, it must give the complainants less land than they covered by the decree of the court below. The entry of the appellees need not be noticed, as it is posterior in date to that of the complainants below.
We observe that in the facts agreed by the parties, there is a reservation of some questions touching the effect of the possession of the panics respectively, which may arise, in the event of the complainants claim interfering with one in the rank of Grant. As the rights of the parties on this point cannot be understood until ascertained by survey, this point must, therefore, be kept open till the survey is made according to this opinion.
The decree is reversed with, costs, and the cause is remanded for new proceedings, not inconsistent with this opinion.